## MIDDLE CREEK DITCH COMPANY, APPELLANT, *v.* HENRY ET AL., RESPONDENTS.

[Submitted March 8, 1895. Decided April 1, 1895.]

WATER RIGHTS—*Conveyance of usufruct of water.*—The usufruct of the waters of a stream for irrigation, acquired by an appropriator under chapter 74, division 5, of the Compiled Statutes, is in the nature of real estate, and will pass by an instrument of conveyance containing apt terms, but the grantor can convey only the use which he owns, and such use is not enlarged or extended by a conveyance thereof. (*Woolman* v. *Garringer*, 1 Mont. 535; *Columbia Min. Co.* v. *Holter*, 1 Mont. 296; *Creek* v. *Bozeman Water Works Co.*, *ante*, p. 121, cited.)

SAME— *Same* — *Validity of instrument of conveyance.* — A contract transferring rights to the use of water for irrigation acquired by appropriation under chapter 74, division 5, of the Compiled Statutes, although not acknowledged or recorded, is valid and binding as between the parties thereto, and is effectual to convey the usufruct of the water as then owned by the grantor in such contract. (*Taylor* v. *Holter,* 1 Mont. 688; *Belk* v. *Meagher,* 3 Mont. 75; *McAdow* v. *Black,* 4 Mont. 485, cited; *Barkley* v. *Tieleke,* 2 Mont. 59, reviewed.)

SAME—*Same—Purchaser in good faith.*—An appropriator of the use of the water of a stream, subsequent to the conveyance of the same use by a previous owner, is not a "purchaser" within the meaning of the statute (Comp. Stats., div. 5, § 260), which provides that an unrecorded conveyance of real estate "shall be deemed void as against any subsequent purchaser in good faith and for a valuable consideration of the same real estate, or any portion thereof, where his own conveyance shall be first duly recorded."

SAME—*Abandonment of use of water by appropriator.*—Abandonment is a matter of intention, and there is no such thing as an abandonment to particular persons, or for a consideration. A conveyance by an instrument in writing sufficient for the purpose of the usufruct of water for a valuable consideration is clearly not an abandonment. (*Atchison* v. *Peterson,* 1 Mont. 461; *McCauley* v. *McKeig,* 8 Mont. 389; *Tucker* v. *Jones,* 8 Mont. 225, cited.)

SAME— *Validity of grant.*—In the case at bar the appropriators of the use of water from the lower part of a stream entered into and executed a certain contract in writing, whereby they did " give and grant " to an association of upper appropriators on the stream the usufruct of waters, as appropriated and owned by the grantors at the time of the grant, in consideration of the promise of said association to furnish the use of a quantity of water to this stream, equal to that granted by the lower proprietors, by means of a supply ditch from another stream. The consideration was delivered, in that the supply ditch was completed as agreed. The contract was neither acknowledged nor recorded. *Held,* a valid conveyance of the usufruct of the water.

SAME—*Erroneous exclusion of evidence.*—The action was brought by the Middle Creek Ditch Company, successors to the Upper Middle Creek Ditch Company, for the purpose of determining the rights of itself and of the defendants in and to the use of the waters of said stream, and on the trial the court granted the motion of the defendants to strike out all evidence introduced by the plaintiff tending to prove any of the water rights of the lower appropriators who joined in the conveyance of those rights to the Upper Middle Creek Ditch Company. *Held,* That the exclusion of such evidence was error.

APPEAL—*Remand of cause for further proceedings.*—Error occurring on the trial upon the question of the admissibility of evidence necessitates a new trial. (*Woolman* v. *Garringer,* 2 Mont. 405; *Collier* v. *Ervin,* 2 Mont. 557; *Barkley* v. *Tieleke,* 2 Mont. 435, cited.)

*Appeal from Ninth Judicial District, Gallatin County.*

ACTION to determine water rights. Plaintiff's motion for a new trial was denied by ARMSTRONG, J. Reversed.

Statement of the case by the justice delivering the opinion:

This action was brought by the plaintiff for the purpose of finally settling and determining the rights of itself and the

twenty-two defendants in and to the use of the water of Middle creek in Gallatin county. (Comp. Stats., div. 5, § 1260.)

The case was tried, and findings were made, upon which judgment was entered, determining the rights, and the priorities of rights, of the several parties in and to the use of said waters.

The plaintiff moved for a new trial, which motion was denied. It now appeals.

The question upon the appeal is the alleged error of the court in striking out certain evidence introduced by the plaintiff.

To make clear the position of the court in making this ruling, and also the contention of counsel in his argument that that ruling was error, a somewhat detailed statement is required.

Prior to the year 1871 a considerable number of persons settled upon lands adjoining and in the neighborhood of Middle creek. They acquired lands. The lands required water for irrigation. These farmers appropriated and used various quantities of the water of the creek for beneficial purposes. (Gen. Laws, div. 5, c. 74.) Their appropriations were from one hundred to two hundred inches each. They are the persons who were known upon the trial as the lower Middle creek appropriators. We insert upon the opposite page a rough diagram of the situation, which we take from the respondent's brief. The flow of the creek is from south to north. In 1870 other farmers settled upon lands further up the creek, in the neighborhood marked upon the map "Appellant's Ditches." Appellant's ditches are those numbered 7 to 10 on the map. The respondents' ditches are those numbered from 1 to 6. The ditches of the lower appropriators appear as indicated on the lower or north portion of the map. The West Gallatin river lies to the west of Middle creek, as shown upon the map. The broad line running from the West Gallatin river to Middle creek is a ditch cut from the river to the creek for the purposes as hereinafter appear in this statement.

In 1870 a conflict arose between the lower Middle creek appropriators and the upper appropriators as to the use of the waters of the creek. The upper appropriators had then organ-

ized themselves into an association called the Upper Middle
Creek Ditch Company. In 1871 certain of the lower appro-
priators entered into and executed a certain contract in writing
with the Upper Middle Creek Ditch Company, composed of
the settlers on the upper creek, the substance of which agree-
ment was as follows: The contract recites that certain persons
occupying farms in the neighborhood of the upper part of the
creek, being desirous to use the waters for irrigating and other
purposes, and having formed themselves into an association
called the Upper Middle Creek Ditch Company, and consist-
ing of certain persons, whose names are set forth; and whereas,
the signers of the agreement, who were the lower appropria-
tors, had, by prior settlement and actual appropriation, ac-
quired a prior right to the waters of the creek to the extent
of their several ditches, which were carrying water from the
creek; and whereas, the ditch company proposed to build a
supply ditch from the West Gallatin river to Middle creek for
the purpose of throwing into Middle creek a quantity of water
equal to or greater than the quantity which the members of
said company wished to take out of Middle creek above for
irrigating; and whereas, they (the upper people) intended to
construct said ditch as soon as practicable, and keep it in re-
pair: therefore, the signers of this instrument, the lower appro-
priators, in consideration of their neighborly goodwill to the
members of the ditch company, and in consideration of the
promise of the ditch company people to build the supply ditch
and keep it in repair, and bring into Middle creek a quantity
of water, as above described, the said lower appropriators
(quoting now the language of the contract), "do hereby give
and grant unto the said members of the said ditch company,
and to their heirs and assigns, our rights, respectively, to the
use of the water naturally flowing in Middle creek to the
extent and capacity of said supply ditch of said company, and
the waters actually supplied by it into Middle creek." The
contract provided that the ditch company people should not
acquire any rights in the use of said water until the supply
ditch was built and supplying water. The contract further
provided that the rights therein granted should be suspended
if the quantity of water furnished should be less than the

aggregate of the quantities of water then taken out of Middle creek by the ditches of the members of said company, until said failure should be remedied by the ditch company. There were other provisions of the contract which it is not necessary here to recite. This contract was signed by all the lower appropriators, except by perhaps three or four.

This contract was not acknowledged, nor was it ever recorded in the records of Gallatin county.

By several reorganizations this original association, called the Upper Middle Creek Ditch Company, became the present plaintiff, the Middle Creek Ditch Company.

In pursuance to this contract the ditch company built the supply ditch from the West Gallatin river, and finished it in June, 1872. They turned in sufficient water to supply the lower appropriators, and have continued to do so. Thereupon, the upper appropriators, the persons associated in the ditch company, used the naturally flowing waters of said Middle creek, taking the same out in various ditches, above the point where the supply ditch emptied the West Gallatin water into the channel of Middle creek.

The respondents, at various times, have taken out and appropriated, or attempted so to do, certain of the waters of Middle creek, from the ditches as marked on the map from 1 to 6.

Therefore, in consideration of the construction of this supply ditch by the upper appropriators, they were allowed to use from the upper portion of Middle creek a quantity of water equal to the quantity which they threw into the channel of the creek by the supply ditch from the West Gallatin river.

All persons concerned in this case had, as far as the purposes of this decision are concerned, lands for which the water which they appropriated was required.

The above-recited facts were proved upon the trial of the case. The contract of 1871 was introduced in evidence. Proof was made of the appropriation and use of the waters of Middle creek by the lower appropriators in various years from 1864 up to 1871, the date of the making of the contract of that year. Thereupon the defendants made a motion to the court, in the following language:

"Come now the defendants, John J. Henry, Edwin Hodgman, William Welch, and James White, and, for themselves and their codefendants, move the court to strike out and disregard any and all evidence introduced by the plaintiff tending to prove or establish any of the water rights of C. H. Waterman, John M. Robinson, and the other appropriators on the lower Middle creek, who entered into and signed the contract marked 'Exhibit 1,' introduced by plaintiff, and dated in 1871, for the following reasons:

"1. Because it appears from the evidence in this cause that the appropriators and parties signing said contract surrendered and abandoned any and all right which they ever had to the waters of Middle creek, and that the plaintiff acquired no right to the waters of said creek by any pretended purchase from said appropriators.

"2. Because the only rights which the plaintiff can maintain, if it can maintain any, are the water rights which the plaintiff has obtained from the appropriators of upper Middle creek, if it has obtained any of such rights."

The court sustained this motion, and struck out and disregarded all of the testimony introduced by the plaintiff tending to prove or establish any of the water rights of said lower Middle creek appropriators who entered into and signed the contract of 1871, and excluded all of said testimony, and declined to entertain or consider the same, upon the grounds and for the reasons set forth in said motion. This ruling of the court was excepted to, and the error in that respect is now the subject of appellant's complaint in this court.

The court, in its findings and judgment, determined how many inches of water each of the persons concerned in the lawsuit was entitled to, and also fixed the date from which each of said persons should date his priority. The result of the ruling of the court in the matter complained of by appellant, and set out in full above, was, that it fixed the priorities of the parties otherwise than they would have been determined had the ruling been otherwise. The upper Middle creek appropriators claimed their dates of appropriation to go back to the appropriations of the lower appropriators in the years from 1864 to 1871. They claimed that the contract of 1871

was a conveyance to them of the right to use the waters of Middle creek then vested in said lower appropriators. If, under the contract of 1871, these upper appropriators could trace their title to the use of the waters, through the contract of 1871, back to the earlier appropriations in the '60's, they would thus fix their dates of appropriation earlier than those of some of the respondents, and would thus obtain priorities in the right to the use of the water, which were, of course, of great value. But when the court struck out the evidence of these earlier appropriations, the upper appropriators, the appellants, were obliged to rely upon their acts of appropriation performed subsequent to the contract of 1871; and, being compelled to place their rights upon such acts, some of the respondents were enabled to obtain priorities which they would not have secured had appellant been able to date back to the appropriations in the '60's. The ruling, therefore, was one of vital importance to both parties. The court held that the contract of 1871 did not convey title in and to the use of the waters of Middle creek from the lower appropriators to the upper appropriators, except as between themselves, and was invalid as conveying title as against respondents when they appropriated the waters without knowledge of this contract by reason of its not being recorded. The court also held that this contract, not conveying title to the use of the waters, operated as an abandonment of the use of those waters by the lower appropriators, and that the upper appropriators and the respondents came in according to their priorities obtained by virtue of the acts performed after 1871.

The question for consideration in the opinion below is, whether this contract of 1871 was an abandonment, and whether the contract, not being acknowledged and recorded, the subsequent appropriators, among the respondents, were in the position of innocent purchasers, taking without notice of any conveyance from the lower appropriators to the upper ones.

*Luce & Luce*, and *Toole & Wallace*, for Appellant.

I. The court erred in striking out and disregarding the evidence introduced by the plaintiff establishing the original appropriations of the defendants.

II.   The court erred in holding that the contract or grant of 1871 conveyed nothing, but that it was evidence of abandonment.   The grant itself expresses the consideration, and is made in words of the present tense importing a grant *in præsenti.*   (*Schulenberg* v. *Harriman,* 21 Wall. 44.)   The gist of an abandonment is the intention to give up some thing without any intention of conveying it to another, or of ever reclaiming it.   (*Atchison* v. *Peterson,* 1 Mont. 561; *Stevens* v. *Mansfield,* 11 Cal. 366; *Richardson* v. *McNulty,* 24 Cal. 344; *McLeran* v. *Benton,* 43 Cal. 476; *Morenhaut* v. *Wilson,* 52 Cal. 267.)   It includes both the intention to abandon and the external act by which the intention is carried into effect (*Judson* v. *Malloy,* 40 Cal. 309; *Bequette* v. *Calfield,* 4 Cal. 279; *St. John* v. *Kidd,* 26 Cal. 264; *Bell* v. *Mining Co.,* 36 Cal. 215; *Smith* v. *Cushing,* 41 Cal. 97; *Porter* v. *Chapman,* 65 Cal. 365; *Roanoke etc. Co.* v. *Kansas City etc. Co.,* 108 Mo. 50; *Dill* v. *Board,* 47 N. J. Eq. 421; *McCue* v. *Water Co.,* 5 Wash. 156; 3 Washburn on Real Property, 3d ed., 66; *Waring* v. *Crow,* 11 Cal. 367; *Mallett* v. *Uncle Sam Min. Co.,* 1 Nev. 168; *Weill* v. *Mining Co.,* 11 Nev. 212; *McDonald* v. *Bear River etc. Co.,* 13 Cal. 237; *Dodge* v. *Marden,* 7 Or. 456; *Moon* v. *Rollins,* 36 Cal. 333; *Wiggins* v. *McLeary,* 49 N. Y. 347; *Davis* v. *Perley,* 30 Cal. 630); and the law will not presume abandonment from lapse of time.   (*Partridge* v. *McKinney,* 10 Cal. 181; *Crandall* v. *Woods,* 18 Cal. 144; Tiedeman on Real Property, 606; *Williams* v. *Nelson,* 24 Pick. 141; *Breuthingen* v. *Hutchinson,* 1 Watts, 46; *Bird* v. *Lisbros,* 9 Cal. 1.)   It must be made to appear affirmatively by the party relying on it to defeat a recovery.   (See *Moon* v. *Rollins, supra.*)   Water rights are in the nature of real property (Comp. Stats. §§ 202, 269; 3 Kent's Commentaries, 439; 2 Washburn on Real Property, 3d ed., 319; *Quigley* v. *Birdseye,* 11 Mont. 445; *Basey* v. *Gallagher,* 20 Wall. 685; *Cave* v. *Crafts,* 53 Cal. 135; *Ware* v. *Walker,* 70 Cal. 591; *Hindman* v. *Rizor,* 21 Or. 112; *Geddis* v. *Parish,* 1 Wash. 587; *Tucker* v. *Jones,* 8 Mont. 232; *Barkeley* v. *Tieleke,* 2 Mont. 64; *Simmons* v. *Winters,* 21 Or. 35; *Swetland* v. *Olson,* 11 Mont. 27); and real estate once vested cannot be abandoned.   It is only possessory titles, inchoate rights or rights to acquire title, easements, servitudes, home-

stead exemptions, and the like, that can be abandoned.   (*Bird*
v. *Lisbros, supra; Ferris* v. *Coover,* 10 Cal. 580; *Galckauf* v.
*Reed,* 22 Cal. 469; *Dyson* v. *Bradshaw,* 23 Cal. 528; Tiede-
man on Real Property, § 739; *Dutch Flat Co.* v. *Mooney,* 12
Cal. 538; *Davis* v. *Perley, supra; Davenport* v. *Turpin,* 43 Cal.
507; *Smyles* v. *Hastings,* 22 N. Y. 217; *Wiggins* v. *McLeary,
supra; School District* v. *Benson,* 31 Me. 381; *Judson* v. *Mal-
loy, supra; Richardson* v. *McNulty, supra.*)   Such rights as
those in suit must be clearly held to be incorporeal heredita-
ments (*Donnell* v. *Humphreys,* 1 Mont. 525), and may be
lost by abandonment (Comp. Stats., § 1251), but the law does
not favor abandonment, even of such rights.   (*Waring* v.
*Crow, supra; McDonald* v. *Bear River etc. Co., supra; Dunn*
v. *Torzer,* 10 Cal. 167.)

III.   The instrument of 1871 was, and is, good as a direct
and present grant (Comp. Stats., § 270; 20 Am. & Eng. Ency.
of Law, 568), and should be made operative in some way, if
possible, and the construction should be liberal to enforce the
original design.   (*Foxcroft* v. *Mallett,* 4 How. 333; *Bember* v.
*Fromberger,* 4 Dall. 436; *Canal Co.* v. *Hill,* 15 Wall. 94.)   If
not good as a deed of conveyance, it is good as a contract of
sale, and, being a present sale, created an equitable estate in
the vendee.   (*Lyon* v. *Pollok,* 99 U. S. 668; *McNeal* v. *Shirley,*
33 Cal. 207; *Bradley* v. *Washington etc. Co.,* 13 Pet. 89; *Mau-
ran* v. *Bullus,* 16 Pet. 528).   The law presumes in favor of the
validity of contracts.   (*Shaver* v. *Bear River etc. Co.,* 10 Cal.
400; *Water Co.* v. *Fluming Co.,* 22 Cal. 621; 2 Parsons on
Contracts, 5th ed., 503.)   The conveyance was good and valid
as between the parties, and, at least, conveyed an equitable title
to all the rights therein referred to.   It was good as such at
common law, which existed here in 1871.   (Comp. Stats.,
§ 201; *Ortman* v. *Dixon,* 13 Cal. 36; *Owen* v. *Frink,* 24 Cal.
171; *Ricks* v. *Reed,* 19 Cal. 553; *Landers* v. *Bolton,* 26 Cal.
405; *Munger* v. *Boldridge,* 41 Kan. 236; *Missouri Pac. Ry. Co.*
v. *Houseman,* 41 Kan. 300, 304; *Keeling* v. *Hoyt,* 31 Neb.
453; *Hutchinson* v. *Hutchinson,* 16 Col. 349; *Siccard* v. *Davis,*
6 Pet. 124; *Maginac* v. *Thompson,* 7 Pet. 348.)   The acknowl-
edgment to a deed is no part of the deed, and, as between the
parties, it is good without acknowledgment (*Taylor* v. *Holter,*

1 Mont. 688; *McNeal* v. *Shirley, supra; Belk* v. *Meagher,* 3 Mont. 74; *McAdow* v. *Black,* 4 Mont. 475); nor is a seal essential. (*Comstock* v. *Breed,* 12 Cal. 286; *United States* v. *Linn,* 15 Pet. 290.) The grantees in the contract of 1871 went into immediate possession, and they and their successors have ever since maintained possession under that instrument. Their title, therefore, was equivalent to the legal title, a conveyance of which could have been compelled at any time. (*Morrison* v. *Wilson,* 13 Cal. 495; *Rose* v. *Treadway,* 4 Nev. 455; *Arguello* v. *Edinger,* 10 Cal. 158; *Blum* v. *Robertson,* 24 Cal. 142; *Weber* v. *Marshal,* 19 Cal. 457; *Morrell* v. *Mann,* 5 N. Y. 243; *Carothers* v. *Alexander,* 74 Tex. 309; and see *Railway Co.* v. *Graham,* 55 Ark. 294; *Hays* v. *Railroad Co.,* 18 S. W. Rep. 1115; 1 Washburn on Real Property, 5th ed., 492; *Union Pac. R. R. Co.* v. *McAlpine,* 129 U. S. 305; Comp. Stats., § 258.) The writing was surely sufficient under the statute of frauds (Comp. Stats., § 217), and, if there had been no writing, the proofs are sufficient to take the case out of the statute, for the purchasers went into possession and paid the consideration and thereby acquired the equitable title. (See 8 Am. & Eng. Ency. of Law, 736; *Manning* v. *Franklin,* 81 Cal. 205; *Smith* v. *Smith,* 51 Hun, 164; *Tipp* v. *Hunt,* 25 Neb. 91; *Calancini* v. *Branstetter,* 84 Cal. 249; *Gould* v. *Banking Co.,* 136 Ill. 60; *Bold* v. *Atwood,* 26 Pac. Rep. 1058; *Pireaux* v. *Simon,* 79 Wis. 393; *Greenlee* v. *Roebe,* 48 Kan. 503; *Moulton* v. *Harris,* 94 Cal. 420; *Peck* v. *Williams,* 15 N. E. Rep. 270; *Larson* v. *Johnson,* 78 Wis. 300; *Anderson School Tp.* v. *Lodge,* 29 N. E. Rep. 411; *Webber* v. *Le Compte,* 72 Md. 249; *Brown* v. *Trust Co.,* 117 N. Y. 266; *McKenna* v. *Bolger,* 1 N. Y. Supp. 651.)

IV. No such penalty as abandonment is provided by law for not preparing the instrument for record and recording it. The legislature, in section 260 of the Revised Statutes, having specified the effect of not recording a conveyance, a court will presume that no other effect is intended. (*Call* v. *Hastings,* 3 Cal. 183; *Bird* v. *Dennison,* 7 Cal. 299; *Stafford* v. *Lick,* 7 Cal. 490; *Hunter* v. *Watson,* 12 Cal. 363; *Perkins* v. *Thornburg,* 10 Cal. 192; *Lee* v. *Evans,* 8 Cal. 424; *Belloc* v. *Rogers,* 9 Cal. 128; *People* v. *Whitman,*

10 Cal. 38; *Smith* v. *Williams*, 44 Mich. 240; *Bank* v. *Lord*, 33 Hun, 557; *Lissa* v. *Posey*, 64 Miss. 352; *Martin* v. *Nash*, 31 Miss. 324; 5 Am. & Eng. Ency. of Law, 451; 20 Am. & Eng. Ency. of Law, 571.)   The defendants cannot claim protection as subsequent purchasers in good faith, or for value. The persons for whose benefit the recording acts are designed are subsequent purchasers of the same property from the same grantor immediate or mediate, and who would suffer loss by reason of the prior conveyance.   (See *Warnock* v. *Harlow*, 31 Pac. Rep. 700; 20 Am. & Eng. Ency. of Law, 575, 580–83; *Ricks* v. *Reed*, 19 Cal. 577; *Lawton* v. *Gordon*, 34 Cal. 37; *Withers* v. *Little*, 56 Cal. 370; *Aurrecoechea* v. *Sinclair*, 60 Cal. 532.)   Every defendant in this case, before he made an appropriation or purchased an appropriation from another party, if any of them did so, had notice of the prior rights which have come down to the plaintiff in this case.   (*Brush* v. *Ware*, 15 Pet. 110; *Fair* v. *Stevenot*, 29 Cal. 486.)   A party put by circumstances on inquiry as to a fact is affected with constructive notice thereof.   (*Oliver* v. *Platt*, 3 How. 333; *Carr* v. *Hilton*, 1 Curt. 390; *United States* v. *Sturges*, 1 Pa. St. 525; *Hinds* v. *Valtier*, 7 Pet. 252; *Godfrey* v. *Beardsley*, 2 McLean, 412; *Lardy* v. *Morgan*, 3 McLean, 388; *Hardy* v. *Harbin*, 1 Saw. 204; *Whitebread* v. *Jordon*, 1 Younge & C. 303; *Kennedy* v. *Green*, 3 Mylne & K. 699; *Maybin* v. *Kirby*, 4 Rich. Eq. 605; *Center* v. *Bank*, 22 Ala. 743; *McGee* v. *Gurdart*, 20 Ala. 95; *Estrada* v. *Murphy*, 19 Cal. 274; *Wilson* v. *Castro*, 31 Cal. 243; *Reeder* v. *Barr*, 4 Ohio, 447.)   A party entitled to the use of water may change the place of diversion and the plan of use, and may use the water for any lawful purpose, whether the same as the one for which the appropriation was made or not. (*Woolman* v. *Garringer*, 1 Mont. 535; *Kidd* v. *Laird*, 15 Cal. 180; *Butte etc. Min. Co.* v. *Morgan*, 19 Cal. 609; *Higgins* v. *Barker*, 42 Cal. 234; *Maeris* v. *Becknell*, 7 Cal. 261; *Jenkins* v. *Bergin*, 7 Pac. Rep. 684; *Fuller* v. *Swan River etc. Min. Co.*, 19 Pac. Rep. 836; Comp. Stats., § 1252.)   And such prior right to the use of waters is not inseparable from the land for the benefit of which the appropriation was made, and may be sold to be used on other land.   (*Strickler* v. *Colorado Springs*,

16 Col. 61; *McDonald* v. *Bear River etc. R. R. Co., supra;* Black's Pomeroy on Water Rights, § 61.)

V. If the court could possibly hold that said contract was a nullity, then the lower Middle creek appropriators who signed said contract did not abandon, for they never ceased, from the time they made their respective appropriations to the present time, to take water out of the channel of Middle creek. Water which flows into a natural stream becomes of that stream, subject to the same natural rights as the rest of the water. This is true no matter how the water is caused to flow into the stream. (Goddard on Easements, 51; *Woods* v. *Wand,* 2 Ex. 779; Washburn on Easements, 274; Angell on Watercourses, 95; *Eddy* v. *Simpson,* 3 Cal. 249; *Kelly* v. *Natoma Water Co.,* 6 Cal. 108; *Schulez* v. *Sweeney,* 19 Nev. 359; *Butte Canal etc. Co.* v. *Vaughn,* 11 Cal. 143.)

VI. The plaintiff shows *prima facie* title by the 1871 contract and the other deeds let in, and possession and right of possession to the property. It was therefore error to exclude that proof, and it was such proof as the defendants should have overcome. (*Smith* v. *Breneman,* 13 Cal. 114; *Goodall* v. *West,* 5 Cal. 339.)

VII. The duplicate of the certificate of incorporation of the Upper Middle Creek Supply Ditch Company was not required by the statute to be filed, for the company was organized as a corporation by complying in every respect with the requirements of article II, pages 463, 474, of the Laws of Montana of 1878. (*Hammer* v. *Garfield Min. Co.,* 130 U. S. 297.) There is no suggestion that the quantity of water used by the Upper Middle Creek Supply Ditch Company was in excess of the purposes or requirements of the corporation, but, even if they were, the title to these rights vested in the corporation and could not be attacked, and the same is true as regards the deeds from this corporation to the plaintiff. (2 Morawetz on Corporations, §§ 710, 711; *Natoma Water etc. Co.* v. *Clarkin,* 14 Cal. 552; Angell & Ames on Corporations, 113–21; *National Bank* v. *Mathews,* 98 U. S. 621; *Cowell* v. *Springs Co.,* 100 U. S. 55; *Miners' Ditch Co.* v. *Zellerbach,* 37 Cal. 544; *Smith* v. *Sheeley,* 12 Wall. 358; *Railroad Co.* v. *Howard,* 7 Wall. 393.) To say the least, this was a *de facto* corporation,

and transfers of property by or to it were valid (2 Morawetz on Corporations, 753); and this would be the case even though the corporation were not legally created as regards all parties but the state. (*Close* v. *Glenwood Cemetery*, 107 U. S. 466; 2 Wait's Actions and Defenses, 333; *Whitney Arms Co.* v. *Barlow*, 63 N. Y. 62; and see *Fairfax* v. *Hunter*, 7 Cranch, 603; *California etc. Tel. Co.* v. *Alta etc. Tel. Co.*, 22 Cal. 390; *Union W. Co.* v. *Murphy etc. Co.*, 22 Cal. 631; *Crowder* v. *Sullivan*, 128 Ind. 486.)

*Robert B. Smith*, and *R. L. Word*, of counsel, for Respondents.

A change of the point of the diversion of water cannot be made to the injury of another. (Comp. Stats., § 1252.) When these lower claimants entered into the contract of 1871, for a consideration therein expressed, they abandoned all right and interest they ever had in the natural flow of water in Middle creek. (*Barkley* v. *Tieleke*, 2 Mont. 64; *Chiatovich* v. *Davis*, 17 Nev. 135; Pomeroy on Riparian Rights, § 58; *Smith* v. *O'Hara*, 43 Cal. 371; *Kirman* v. *Hunnewill*, 93 Cal. 519; Gould on Waters, § 234.) Only a usufructuary right or easement can be acquired in waters flowing in a natural channel, and this must be done by the usual appliances for diverting and controlling the use of such water. (Pomeroy's Riparian Rights, § 55; *Dalton* v. *Bowker*, 8 Nev. 190; *Eddy* v. *Simpson*, 3 Cal. 249; *Kidd* v. *Laird*, 15 Cal. 180; *Park Canal Min. Co.* v. *Hoyt*, 57 Cal. 44; *Los Angeles* v. *Baldwin*, 53 Cal. 469.) The Upper Middle Creek Supply Ditch Company never was organized as required by law, the certificate of incorporation never having been filed with the secretary of state, as provided by law. The grantee was not *in esse*, and, in order for a deed to be effective and transfer title, there must be a grantee capable of receiving the present estate and title granted or conveyed. (2 Washburn on Real Property, 590; *Hunter* v. *Watson*, 12 Cal. 363; *Sunol* v. *Hepburn*, 1 Cal. 255; *Barr* v. *Schroeder*, 32 Cal. 609.) These deeds were too indefinite and uncertain as to the property or rights attempted to be conveyed to be effectual in passing title. One of the requisites of a deed is, that the property conveyed, or intended to be conveyed, must

be described with certainty and precision. (2 Washburn on Real Property, 661; *Chenowith* v. *Haskel*, 3 Pet. 92; *Boardman* v. *Reed*, 6 Pet. 328.) The respondents are not subsequent purchasers in good faith, but they are *bona fide* appropriators from the same stream, and have a right to invoke the same equitable doctrines and legal rules for their protection as are accorded to subsequent purchasers. (*Frey* v. *Lowden*, 11 Pac. Rep. 838; *Jacobs* v. *Lorenz*, 2 West Coast Rep. 410; *Le Neve* v. *Le Neve*, 2 Lead. Cas. Eq. 109; *Churchill* v. *Lauer*, 24 Pac. Rep. 107; Story's Equity Pleading, §§ 285, 606, 811, 825; *Ballou* v. *Inhabitants, etc.*, 4 Gray, 328; Story's Equity Jurisprudence, §§ 404, 409, 410, 1502, 1503; Comp. Laws, div. 5, §§ 1239, 1242; Gould on Waters, § 236; 2 Pomeroy's Equity Jurisprudence, § 591.) When each party to a controversy has equal equitable rights, and one has in addition a legal title, such party holding the legal title will prevail; of equal or similar equities one cannot defeat or oust the other. (See 1 Pomeroy's Equity Jurisprudence, §§ 414–17; 2 Pomeroy's Equity Jurisprudence, §§ 591–678; Story's Equity Jurisprudence, § 1503.) Failure to use the waters of a stream for any useful purpose for a period of five years, or for the period of the statute of limitations, after an appropriation of the same, operates as an abandonment thereof, and the water becomes public property, subject to be recaptured and appropriated by any other person. (*Smith* v. *Logan*, 18 Nev. 149; Pomeroy's Riparian Rights, §§ 88–90; *Kirman* v. *Hunnewill, supra; Meagher* v. *Hardenbrook*, 11 Mont. 385; *Davis* v. *Gale*, 32 Cal. 26; *Doge* v. *Marden*, 7 Or. 456; *Platt Water Co.* v. *North Irrigation Co.*, 12 Col. 525.)

DE WITT, J.—We are of opinion that the instrument in writing, signed by the lower appropriators in 1871, was a grant to the association of the upper appropriators, then called the Upper Middle Creek Ditch Company, of the usufruct of the water of Middle creek, as appropriated and owned by the lower appropriators at the time of the grant. Such usufruct was of the nature of real estate. (*Quigley* v. *Birdseye*, 11 Mont. 439; *Barkley* v. *Tieleke*, 2 Mont. 64; *Sweetland* v. *Olson*, 11 Mont. 27; Black's Pomeroy on Water Rights, §§ 60, 61.)

The granting words of that instrument are, "do hereby give and grant." The consideration of the grant was the furnishing by the upper appropriators to the lower ones of the use of a quantity of water from the West Gallatin river equal to that which the lower appropriators then owned. The consideration was delivered, in that the supply ditch was finished in June, 1872.

Respondents' counsel argue that one cannot own the *corpus* of water, and therefore cannot sell the same. But the lower appropriators did not purport to own or sell the *corpus* of the water. They had appropriated the water for a beneficial use, and, when they sold to the upper appropriators, they described the subject of the grant as "our rights, respectively, to the *use* of the water naturally flowing in Middle creek, to the extent and capacity of said supply ditch of said company, and the waters actually supplied by it into Middle creek."

The grantors, therefore, in that instrument clearly conveyed the usufruct of the water. (Gould on Waters, § 304.) They did not convey the lands upon which the water had been formerly used, nor did they convey the ditches in which it had flowed; for the land they retained themslves, and the ditches would have been of no value to the purchasers, who were about to use the water at a place higher up the creek. One has a right to change the place of diversion of water, and also the beneficial use thereof. (*Woolman* v. *Garringer*, 1 Mont. 535.) That was done in this case by the conveyance of 1871. The use was not enlarged or extended by that conveyance. The grantors conveyed, and, of course, could convey, only the use which they owned (*Columbia Min. Co.* v. *Holter*, 1 Mont. 296; *Creek* v. *Bozeman Water Works Co., ante*, p. 121), and this they did in apt terms. The instrument of 1871 was good as a conveyance between the parties thereto.

Sections 235 and 237, division 5, of the General Laws provides as follows:

"Sec. 235. Conveyances of land, or of any estate or interest therein, may be made by deed, signed by the person from whom the estate or interest is intended to pass, being of lawful age, or by his lawful agent or attorney, and acknowledged or proved and recorded as hereinafter directed."

"SEC. 237. Every conveyance in writing whereby any real estate is conveyed, or may be affected, shall be acknowledged or proved and certified in the manner hereinafter provided."

The instrument in question was not acknowledged, so as to entitle it to record, nor was it recorded, but section 258, division 5, of the General Laws, provides as follows: "Every conveyance of real estate, and every instrument of writing setting forth an agreement to convey any real estate, may be effected, proved, acknowledged, and certified in the manner prescribed in this act to operate as notice to third persons, shall be recorded in the office of the recorder of the county in which such real estate is situated, but shall be valid and binding between the parties thereto without such record."

This court said in *Taylor* v. *Holter*, 1 Mont. 688: "The acknowledgment to a deed is no part of the deed, and, as between the parties to the instrument, a deed is good without acknowledgment, the acknowledgment and record being required for the protection and benefit of third persons."

We are therefore satisfied that the contract of 1871, as between the parties thereto, conveyed to the upper appropriators the usufruct of the water as then owned by the lower appropriators.

But respondents argue that the instrument was not a conveyance as to respondents, because they were appropriators of the use of said water without notice of the conveyance mentioned, by reason of the fact of its not being recorded; and that the instrument, not being a conveyance, must be construed as an abandonment by the lower appropriators of the use of the water. The district court took this view, and excluded all evidence of appropriations made by the signers of that contract prior to the date of that instrument. These questions we will now consider.

Was the instrument void as to the respondents? A conveyance which may be good between the parties is void as to certain other persons for certain reasons.

Section 260, division 5, of the General Laws provides as follows: "Every conveyance of real estate within this state hereafter made which shall not be recorded as provided for in this chapter shall be deemed void as against any subsequent

purchaser in good faith and for a valuable consideration of the same real estate, or any portion thereof, where his own conveyance shall be first duly recorded."

Conceding that the respondents attempted to appropriate the use of the water without knowledge of the conveyance of 1871 from the lower appropriators to appellant's predecessors, would the respondents then, either in the letter or the spirit of section 260, come within the description of persons named in that section as those against whom the conveyance is void; that is to say, are the respondents subsequent purchasers in good faith, for a valuable consideration, of the same real estate; and, if so, had they their own conveyance recorded prior to any record by appellant? Asking this question seems to answer it. One purpose of the recording law is notice. If one does not record his conveyance he runs the risk of suffering a penalty. If his grantor conveys to a second and other grantee, and the second grantee first records his conveyance, the first grantee, if the conditions named in section 260 exist, suffers the loss of his estate. This is a penalty provided by law for not recording. We cannot presume that there is any other penalty. (*Bird* v. *Dennison,* 7 Cal. 299, 308, 309; *Hunter* v. *Watson,* 12 Cal. 363; *Perkins* v. *Thornburgh,* 10 Cal. 192, and cases cited; *Belloc* v. *Rogers,* 9 Cal. 128; *Smith* v. *Williams,* 44 Mich. 240; 20 Am. & Eng. Ency. of Law, 572, note 1.) The penalty for not recording being as we have indicated, we are then reduced to this inquiry in this case: It being the general rule that the conveyance is good, and there being an exception to this rule, the question is, Do the respondents fall within the exception? We are of opinion that the word "purchaser," as used in section 260, is not employed in the broad sense as indicating all acquisitions of title other than by descent. We think that the word as here used means simply a buyer in the popular sense of that term. The whole spirit of the recording laws indicates this. We think the section means a buyer of the same property from the same grantor, in good faith, and for a valuable consideration, and such a buyer as records his conveyance prior to any record of conveyance to the first buyer.

An appropriator of the use of water subsequent to a convey-

ance of the use of the same water by an owner thereof to his grantee is not such a buyer of the same real estate as is contemplated by the language of section 260. Such a subsequent appropriator does not buy from the same grantor. Indeed, he does not buy at all. He appropriates under certain rules of statute and decision, and thus obtains title. The last portion of section 260 seems to us to be particularly fatal to respondents' contention. In order that a second purchaser may come in ahead of a prior one, the second purchaser's conveyance must be first duly recorded. The respondents had no conveyance which they first duly recorded, or recorded at all. If it be argued that their appropriation was in the nature of a conveyance of the usufruct of the water then *publici juris*, it may be replied that there was no law at the time of those transactions providing for requiring a recording of such appropriation, nor does it appear that any such record was made. (*Moxon* v. *Wilkinson*, 2 Mont. 421.)

We cannot at all understand how it can be contended that the respondents are, under the provisions of section 260, division 5, of the General Laws, in the position of subsequent purchasers for value of the same real estate as was conveyed to the grantees in the contract of 1871, or that they are in any position to invoke the benefit of the provisions of section 260. And, if they are not able to stand upon the provisions of section 260, they cannot claim title to the use of the water conveyed by the lower appropriators to the upper appropriators, except subject to the rights and priorities of said lower appropriators.

Our consideration of the case thus far seems to determine that the lower appropriators did not abandon the use of the water by reason of their contract of 1871. Abandonment is a matter of intention. (*Atchison* v. *Peterson*, 1 Mont. 561; *McCauley* v. *McKeig*, 8 Mont. 389; *Tucker* v. *Jones*, 8 Mont. 225.)

It was said by Terry, C. J., Field, J., concurring, in *Stevens* v. *Mansfield*, 11 Cal. 366: "We think the ruling of the court below clearly erroneous. Admitting the interest of plaintiff in the premises such as could be divested by abandonment, there can be no such thing as abandonment in favor of a particular individual, or for a consideration; such act would be a

gift or sale.   An abandonment is 'the relinquishment of a right, the giving up of some thing to which we are entitled.' (Bouvier's Law Dictionary.)   'Abandonment must be made by the owner, without being pressed by any duty, necessity, or utility to himself, but simply because he desires no longer to possess the thing; and, further, it must be made without any desire that any other person shall acquire the same; for, if it were made for a consideration, it would be a sale or barter, and, if without consideration, but with an intention that some other person should become the possessor, it would be a gift.' (Bouvier's Law Dictionary.)"

That court also said in *McLeran* v. *Benton*, 43 Cal. 467: "The elements of an abandonment are quite different from those of a sale; and where for any reason a transaction fails as a sale it cannot be converted into an abandonment.   There is no such thing as an abandonment to particular persons, or for a consideration." (*Stevens* v. *Mansfield, supra; Richardson* v. *McNulty*, 24 Cal. 343.   See, also, an extensive collection of cases in appellant's brief.)

In the case at bar the evidence is that the parties did not intend to abandon the use of the water which they had appropriated.   Their acts indicated precisely the contrary intention. They conveyed, by an instrument in writing sufficient for the purpose, the use of the water for a valuable consideration. This is not an abandonment.   (Cases *supra.*)

We have investigated this case, and arrived at the conclusion which we think should obtain without yet discussing the case of *Barkley* v. *Tieleke*, 2 Mont. 59.   That case demands some attention at this point.   It seems to have been relied upon by the district court in making the ruling which we have determined was error.   There is language in *Barkley* v. *Tieleke, supra*, which seems to have been construed to be an expression of opinion that, because a deed for the right to the use of water was not acknowledged, that the same was void.   Perhaps that language by itself was sufficient to justify the ruling of the district court.

The court, in that opinion, quoted from finding 7, page 63, language to the effect that the persons constructing certain ditches, by certain unsealed and unacknowledged paper writ-

ings, purported to convey their respective interests therein to certain persons other than plaintiff's grantors, who, by like paper writings, transferred the same to plaintiff's grantors, who took possession thereunder (and not by appropriation) prior to the appropriation by the defendant. The court then, in the opinion in that case, said, on page 64:

"The conveyance or transfers of the property to plaintiff's grantors alone was not sufficient under our statutes to convey the property to them, but the attempt so to do by imperfect conveyances, if it did not operate as an absolute or equitable conveyance, clearly operated as a surrender or an abandonment of their right, title, and interest, acquired by appropriation, which was the digging of the ditches in question."

Respondents' counsel contend that the court there held in that case that an unacknowledged deed was void. But it is seen in the opinion that the court invoked the doctrine of abandonment for the benefit of a *grantee* in a deed alleged to be imperfect. But we cannot believe that the court in that case intended to hold that an unacknowledged deed was void under our statute. The same statutes which we have quoted above as sections 235, 237, 258, and 260 of the present laws have been upon the statute book since 1864. These sections are sections 1, 3, 23, and 25, on page 479 of the Bannack Laws, and are sections 1, 3, 23, and 25 of the Laws of 1872, page 396, et seq.

*Barkley* v. *Tieleke, supra,* was decided about two years after *Taylor* v. *Holter,* 1 Mont. 688. The opinion in *Taylor* v. *Holter* referred to the sections of the law which we have above quoted, and held, as heretofore quoted in this opinion, and which we repeat, as follows: "The acknowledgment to a deed is no part of the deed, and, as between the parties to the instrument, a deed is good without acknowledgment, the acknowledgment and record being required for the protection and benefit of third persons."

*Barkley* v. *Tieleke,* was decided by two of the same learned justices who sat in the case of *Taylor* v. *Holter.* But the court, in *Barkley* v. *Tieleke,* did not mention the decision in *Taylor* v. *Holter,* and it is hardly to be presumed that the justices, sitting in both cases, intended to overrule the doctrine announced so short a time before in *Taylor* v. *Holter.*

It is evident from later decisions of this court that it was not thought that *Barkley* v. *Tieleke, supra,* had held that a deed is void if it were unacknowledged. For it was held in *Belk* v. *Meagher,* 3 Mont. 75: "It is evident that the object and purpose of the certificate of acknowledgment and also of proof of the execution of a deed, as the statute contemplates, is to authorize the deed to be recorded. In the absence of a certificate, and there being no proof of the execution of the deed, the same cannot be recorded; but either a certificate of acknowledgment, or proof of execution under the statute, so authenticates the deed as to qualify it for record. And so, when there is proof of acknowledgment and a certificate thereof annexed or attached to the conveyance, no witnesses are required and the conveyance is entitled to be recorded. And when there is no certificate of acknowledgment, but proof of the execution of the deed can be made by the subscribing witnesses thereto in the manner provided by the statute, then the conveyance is also entitled to record. The object of the record of a deed, and hence of the certificate of acknowledgment and proof of the execution thereof, is to impart notice to third persons. And hence it follows that neither the certificate of acknowledgment nor the attestation of subscribing witnesses are necessary to the validity of a deed, as between the parties thereto, and in no case where there is proof of acknowledgment and certificate thereof annexed or attached to a deed, and the same has been admitted to record by virtue of such certificate, are subscribing witnesses necessary to the validity of such a deed as to third persons."

Again this court said, in *McAdow* v. *Black,* 4 Mont. 485: "Neither was it necessary that the power of attorney should have been certified, acknowledged, and recorded to have made it good as between the mortgagor and mortgagee, in the mortgage executed in pursuance thereof. The mortgage in question might have been enforced against Black, the mortgagor named therein. He could not have attacked the power of attorney because not acknowledged or recorded. In the case of *Taylor* v. *Holter, supra,* this court held that 'the acknowledgment to a deed is no part of the deed, and, as between the parties to the instrument, a deed is good without

acknowledgment, the acknowledgment and record being for the protection of third parties.'"

Therefore, we cannot concede that *Barkley* v. *Tieleke*, intended to hold that a deed was void because it lacked acknowledgment and recording. But, if that case did so intend to hold, it is in conflict with all the other prior and subsequent decisions of this court upon that subject, and cannot be approved in this respect.

Assuming that the deeds mentioned in *Barkley* v. *Tieleke* were void for *some* reason, it is found that the court held, as to the main proposition in the case, as follows: "If the conveyances to plaintiff's grantors did not in fact transfer such an interest as entitled them to all the rights of their grantors, then the right was abandoned, and the possession thereof taken by plaintiff's grantors was as much an original appropriation of the waters of Indian creek as if they had originally constructed the first ditches to divert the same. Such possession, even if it did not determine the *ownership*, under the act of Congress of March, 1866, does, nevertheless, vest in the plaintiff such an equitable interest as to entitle him to maintain this action."

In the report of the case in 4 Morrison's Mining Reports, page 666, it is interpreted by the annotator as follows: "Where the owner of a ditch attempts to convey the same by a deed which is void, but places the grantee in possession, who continues to use the ditch, it operates as an abandonment of his appropriation by the grantor and as a new appropriation by the grantee, dating from the change of possession."

The author of Black's Pomeroy on Water Rights interprets the case as holding as follows: "In both these instances, as has already been shown, no interest *passes* to the transferees; they do not succeed to any *priority* held by their assignor; their rights of priority date only from the time of their own possession and user." (Black's Pomeroy on Water Rights, § 97, footnote.)

The case is also interpreted in Buck's Digest of Montana Reports as holding as follows: "*Held,* in the above case, that an attempt by the original appropriators of a water right to convey the same to plaintiff's grantors by imperfect convey-

ances at least operated, as against them, as a surrender or abandonment, and would also estop them from claiming the same after possession had been transferred to their intended grantees; and that the latter could be regarded, under the circumstances, as owners by recapture and appropriation." (Buck's Digest, 227.)

Returning again to the case at bar, if the attempted conveyance of 1871 from the lower appropriators to the upper appropriators had been void the decision in *Barkley* v. *Tieleke, supra,* might have been invoked to hold that the grantees in such void conveyance took an abandoned right to the *usufruct* of the water, and must date their priorities from the time of the performance of acts subsequent to such abandonment. But, as we have shown, the instrument of 1871 was not void as to its grantees, or as to the respondents as third persons, and the doctrine of *Barkley* v. *Tieleke, supra,* is not applicable.

The motion which the court granted was to strike out all evidence introduced by plaintiff tending to prove any of the water rights of the lower appropriators who signed the contract of 1871. From what we have heretofore said it appears that this action was clearly error. Appellant had the right to trace its title to the use of the waters back to the appropriations of its grantors, who conveyed their rights to appellant's predecessors by the conveyance of 1871. As a result of this ruling of the court the appellant was compelled to rely for its priorities of right only upon acts of appropriation performed by it subsequent to 1871. This let some of the respondents into priorities superior to appellant's rights, which it would have obtained if the court had considered the evidence which it struck out. For this error of the court we are of opinion that the judgment must be reversed.

Appellant also objects that the court struck out evidence of appropriations by some other of appellant's predecessors in interest who did not sign the instrument of 1871. But from an inspection of the motion as made, and the ruling of the court thereupon, both of which are set forth in the statement preceding this opinion, it appears that the court did not strike out this evidence.

This case consumed three weeks in trial. Perhaps it is a

matter of regret that judgment cannot be ordered entered at this time. But that seems to be impossible. The error complained of occurred in the midst of the trial, upon the question of admissibility of the evidence, and to go back to the place where the error occurred necessitates a new trial. (*Woolman* v. *Garringer*, 2 Mont. 405; *Collier* v. *Erwin*, 2 Mont. 557; *Barkley* v. *Tieleke, supra.*)

The judgment of the lower court is therefore reversed, and the case is remanded for a new trial.

*Reversed.*

HUNT, J., concurs.

