QUIGLEY, RESPONDENT, *v.* BIRDSEYE ET AL., APPELLANTS.

[Argued November 11, 1891.  Decided January 18, 1892.]

DAMAGES—*Diversion of water—Instructions.*—In an action for damages for the loss of crops by reason of defendants' interference with plaintiff's water right, the refusal of the court to instruct the jury at the request of the defendants, in effect, that plaintiff could only recover for the net profits of his crops after deducting the cost of planting and raising, which facts must be proved, cannot be held prejudicial when the verdict was for nominal damages, and the plaintiff had proved the market value of the water and the damage from the loss of it and his crops, describing what he had planted and what they were worth, the defendant having had full opportunity to cross-examine as to such matters. (*Carron* v. *Wood,* 10 Mont. 500, cited.)

WATER RIGHTS—*Title by aliens.*—An alien may acquire title to a ditch and water right, and hold the same until office found against collateral attacks by third persons other than the sovereign, and, in the absence of forfeiture by office found, may convey title to his grantee. (*Tibbitts* v. *Ah Tong,* 4 Mont. 536; *Wulf* v. *Manuel,* 9 Mont. 279, distinguished.)

SAME—*Surplus—Instructions.*—In the case at bar it appeared that defendants' water right was prior to plaintiff's, and that in order to exercise their right it was necessary to slum their dam occasionally, but which could not be done without raising plaintiff's gate at the same time.   The court instructed the jury to the effect that an appropriator of water has no right to the surplus over the amount of his appropriation, nor to prevent it from flowing in its natural channel to the prejudice of appropriators below entitled to its use, and if defendants prevented or interfered with the surplus water running into plaintiff's ditch they were liable for damages resulting therefrom.   *Held,* not objectionable as impliedly denying to defendants the right to slum their dam at all, and thereby destroying their water right, inasmuch as the injury of which plaintiff complained was not the occasional use of his dam by defendants, but its unnecessary use to the extent of wholly destroying the enjoyment of his right.

JUDGMENTS—*Form of decree.*—Facts found and required to be stated in the judgment should be stated therein specifically, and not by reference to matter in a pleading.

NEW TRIAL—*Newly discovered evidence.*—Where no effort is made by a party in the trial of a case to prove the contents of a lost deed by secondary evidence, there being within his reach at the time evidence both of the loss of the deed and of its contents, a new trial will not be granted upon the subsequent finding of the deed on the ground of newly discovered evidence.

*Appeal from Third Judicial District, Deer Lodge County.*

Action for damages for the diversion of water. The cause was tried before DURFEE, J. Plaintiff had judgment below.

Statement of the case by the judge delivering the opinion.

The plaintiff brought his action for damages for the taking and diversion of water claimed by him. He also asked that the defendants be enjoined from interfering with his water right. The plaintiff admitted the right of the defendants to two hundred inches of the water of Ophir Creek, said right dating from an appropriation in the year 1865. Subject to such right, the plaintiff claimed two hundred and fifty inches of said water, alleged to have been appropriated in the year 1866. The water of the creek, during the portion of the year when these parties required it for their uses, was heavily charged with tailings from mining operations, above both of the parties, and independent of their rights. Defendants took their water from the creek by the Tiger Ditch. Two hundred and twenty-seven feet below defendants, plaintiff took his water out by the China Ditch. The fall from defendants' head to plaintiff's was eight and one-half feet. Each party had a dam. It seems that these dams had a twofold office — one was to raise the water and throw it into the heads of the ditches; the other was, in order to form a pool in which the tailings from above might settle, so that they would not be carried into the ditches and fill them up. When there was a considerable head of water on, and the mining operations above were extensive, the load of tailings was very heavy, consisting, not only of fine stuff, but of rocks as large as a man's head. Some of the witnesses called this matter "slum," and the dams "slum dams." During active operations above these parties the dams quickly filled with tailings. It then became necessary to open the dams for a few minutes, and let the water rush out, and carry the tailings down the creek. This operation was called "slumming." It was claimed that this slumming could be successful only when the two dams were opened together, or that defendants' dam could be slummed only when plaintiff's gate was also open, so that the water and tailings could sweep clear through; that if plaintiff's dam was closed when defendants slummed, the tailings would back up against defendants' dam and gate,

and impede their operations. It would seem that if both parties slummed at once there was no trouble. It would seem, further, that there was a want of harmonious action between the parties in this matter. Defendants' claimed that they could not use their water right at all, unless plaintiff's dam were opened so that defendants could discharge their tailings. The plaintiff's complaint was that defendants opened his gate, and kept it open, and finally tore it out and threw it into the creek, so that it floated away; the result of which was that the water did not go into plaintiff's ditch, and so interfered with plaintiff's enjoyment of his rights, and that thereby, for several seasons, plaintiff got no water at all, and was greatly damaged. He asked judgment for one thousand dollars damages, and also an injunction to restrain defendants from interfering with his water right. Plaintiff concedes to defendants the prior right to two hundred inches of water, and claims for himself a subsequent right of two hundred and fifty inches. The jury found only a general verdict for twenty-five dollars damages in favor of plaintiff. The court made other special findings. The defendants appeal from an order denying a new trial and from the judgment.

*Robinson & Stapleton*, and *Forbis & Forbis*, for Appellants.

The plaintiff, in proving his case, asked witness what was the damage sustained by him during the several years that he was deprived of the use of the water. This character of proof was objectionable as not the proper manner of proving damages. (1 Sutherland on Damages, 194, 793, 794; *City of Chicago* v. *Huenerbein*, 85 Ill. 594; 28 Am. Rep. 626.) The rights, if any, acquired by the Chinamen who appeared in plaintiff's chain of title were in their nature real estate, and therefore any conveyance of the same to the Chinamen would work an abandonment on the part of the original owners, and the Chinamen would not acquire such an interest as they could convey to plaintiff. (*Tibbitts* v. *Ah Tong*, 4 Mont. 536.)

The fourth and fifth instructions virtually told the jury that the defendants could not interfere with the head-gate of the plaintiff, or divert the waters of Ophir Creek from the ditch of the plaintiff for any purpose whatever, while the evidence

plainly shows that if such waters were allowed continually to run in plaintiff's ditch without taking out plaintiff's head-gate to allow the tailings to be cleared away, in a very short time the tailings would have backed up and rendered defendants' ditch useless for any purpose. The defendants' right to discharge the tailings through plaintiff's head-gate into the main channel of the creek is nowhere disputed, and yet these instructions were given without conditions or modifications, and the court by them practically instructed the jury that the defendants must not divert the water from the plaintiff's ditch, even though his own ditch might thereby be destroyed. These instructions are not only erroneous in themselves, but are in direct conflict with defendants' second and third instructions, whereby the court told the jury that the defendants might draw up plaintiff's head-gate in order to allow the slum and tailings to escape. The court found that the defendants had a prior right to two hundred and fifty inches of the waters of Ophir Creek. The decree confines the defendants to two hundred inches of water, or in other words, gives the plaintiff everything claimed in his complaint, whereas the findings give the defendants two hundred and fifty inches of water; and certainly it cannot be contended that the judgment is supported by these findings.

The defendants had acquired the Illinois Ditch by deed, and upon the trial of the case could not procure evidence of the deed, and were of the opinion that the same had been destroyed by fire, and were unable to prove its contents. Before the case was decided the defendants by affidavit informed the judge of the court that they had discovered their deeds, and asked to be allowed to introduce the same in evidence before he submitted his findings of fact. This was refused. After the decision the defendants moved for a new trial upon the ground of newly discovered evidence, which was denied. The refusal of a new trial under the circumstances was a gross abuse of discretion. (*Cranmer* v. *Porter*, 41 Cal. 462.)

*Cole & Whitehill*, for Respondent·

The first point made by the appellants is without foundation. The only damages assessed against the appellants was the small sum of twenty-five dollars, and these damages were for two or

three years, and were assessed against the appellants for the reason that they deprived the plaintiff of water during these years. There is no proof that the Chinamen in question were aliens. A person born within the United States of Chinese parents is a citizen of the United States. (*In re Sing*, 21 Fed. Rep. 905.) The case of *Tibbitts* v. *Ah Tong*, 4 Mont. 536, does not decide that a Chinaman cannot take up and hold a water right. It simply decides that under the United States law he cannot hold a mining claim, and that decision should not be extended. Subsequent decisions in California and the other Pacific States have doubted the doctrine laid down in that case, and it was not until the Congress of the United States in the Act of March 3, 1887, prohibited aliens from acquiring real estate in the Territories, that the doctrine was enlarged to such an extent as to prohibit aliens from taking possession of any of the lands belonging to the United States in any of the Territories, and that act is not retroactive and does not apply to any thing done before the passage of the act. (*Lobdell* v. *Hall*, 3 Nev. 507; *Courtney* v. *Turner*, 12 Nev. 345; *Princeton Min. Co.* v. *First Nat. Bank*, 7 Mont. 530.) It is admitted that the appellants had a prior right to two hundred and fifty inches of the waters of Ophir Creek, and that the confining them to two hundred inches in the decree was a mistake. We are willing that this court should so modify it but not at our cost, as has been laid down in various cases decided by the Supreme Court of Montana, and particularly in the case of *Palmer* v. *Murray*, 8 Mont. 312. If the defendants knew at the time of the trial that there was a deed in existence necessary for the proof of any of the issues in their case, they should have made the offer to prove it, or if the deed had been burned or lost, its loss could easily have been accounted for and then secondary proof could have been introduced as to the contents of the deed. This is elementary law and there is no need of citations of authority to sustain it. The court exercised a sound discretion in refusing a new trial upon the ground of newly discovered evidence. (*Stoakes* v. *Monroe*, 36 Cal. 388; *People* v. *Voll*, 43 Cal. 168; *Moran* v. *Abbey*, 63 Cal. 56; *McLear* v. *Hapgood*, 85 Cal. 557; *Howard* v. *Winters*, 3 Nev. 539; *United States* v. *Smith*, 1 Sawy. 277; *Francisco* v. *Benepe*, 6 Mont. 243.)

DE WITT, J.—We will examine the points made by appellants in the order in which they have presented and discussed them.

1. The court refused to give the following instruction requested by the defendants: "*Fourth.* The plaintiff is required to prove any damages claimed to a reasonable certainty; the jury cannot give damages on mere speculation. That, to entitle the plaintiff to damages for loss to his garden, it is necessary that there should be proof of the amount of vegetables he would have raised with a supply of water, and the value of such vegetables, after deducting the cost of planting and raising the same; that is, he can recover for only the net profits thereof; and, unless the above facts have been proven, the jury must disregard all evidence as to damages to his garden and crop of vegetables."

The plaintiff asked damages in the amount of one thousand dollars. The jury gave him twenty-five dollars. We have said in *Carron* v. *Wood,* 10 Mont. 508: "If witnesses testify as to what amount of damage resulted from the destruction of a certain thing, measuring the damage in money, the witnesses are subject to all proper inquiries as to how they arrive at the value stated; as to whether or not expenses involved in connection with the subject have been considered in arriving at the value or damage stated, and all other pertinent inquiries would be proper; and, if a witness states a fact which is the result of considering several conditions to arrive at a truthful statement, is it not to be presumed that such conditions have been considered by the witness? At any rate, as before observed, the witness may be questioned as to whether or not he has considered in detail the conditions or circumstances which affect the fact stated." The plaintiff in the case at bar testified that the market value of the water as it was being sold was five cents per inch. This was not disputed. At this rate, the witness said that the damage would amount to about one hundred and fifty dollars per year for two or three years that he was deprived of the water. He testified as to the destruction of his garden, and describes in detail the crops that he had planted, and what they were worth, and that he was wholly deprived of them by the want of the water for two or three years. The defendants

had opportunity to cross-examine. The defendants asked that all of the plaintiff's evidence as to damages be stricken out, and their instruction refused practically asked the same thing. Again, it is to be observed that the verdict for twenty-five dollars, under the circumstances, is more of the nature of a verdict for nominal than special damages. The damages sought to be proved amounted to some four hundred dollars, and, as alleged, to one thousand dollars. Under these circumstances, twenty-five dollars would seem to be nominal damages. If plaintiff's rights were invaded, he was entitled to nominal damages. This seems to be the view that the jury took of the matter of damages. In consideration of the fact that defendants had opportunity to cross-examine as to the details of the damages claimed, and that the verdict seems to be for only nominal damages, we are of the opinion that it appears that the defendants were not injured by the court's refusal to give instruction No. 4.

2. In the chain of title of plaintiff to the ditch and water right which he claims (the China Ditch), appear the names of some alleged Chinamen as grantees from the older owners of the ditch, and as grantors to the plaintiff. Defendants claim that, under the doctrine of *Tibbitts* v. *Ah Tong,* 4 Mont. 536, and *Wulf* v. *Manuel,* 9 Mont. 279, Chinamen cannot take real estate, and therefore that the grant of this water right and ditch to the Chinamen was an abandonment by the original owners, and hence plaintiff took no title from the Chinamen. In those cases the real estate in question was mining claims upon the public domain of the United States. In *Wulf* v. *Manuel* we endeavored to make it clear that such mining claims were a class of real estate *sui generis,* and the doctrine of those cases was placed upon the peculiar character of the real estate in question, by virtue of the provisions of the United States statutes which opened the mineral lands of the United States to exploration and purchase by citizens of the United States and those who had declared their intentions to become such. We said in *Wulf* v. *Manuel,* 9 Mont. 285: "No other persons may apply to purchase [such mineral lands] from the United States. The mineral lands of the government are not open to exploration, occupation, or purchase by aliens. An alien may not even take or hold real estate of this class. . . . ." Let it be conceded,

in the case at bar, that the Chinamen who were a link in the chain of plaintiff's title were aliens. Let it be conceded that the ditch and water right were real estate. It was not real estate of any such nature as are possessory rights to mining claims upon the public domain of the United States. Its possession, or its right of possession, was not restricted, as are said mining rights, by a special statute of the United States, declaring that none should occupy or purchase it but citizens of the United States, and those who had declared their intention to become such.

The inapplicability of the doctrine of *Tibbitts* v. *Ah Tong* and *Wulf* v. *Manuel* to real estate not clothed with the peculiar characteristics of possessory rights to mining claims is apparent. Therefore we have simply this proposition: The chain of title is A to B to C to D. D is in court with his title attacked because C was an alien. The real estate is not a possessory right to a mining claim. All that is to be considered is, therefore, whether an alien may take real estate, and hold the same until office found, against collateral attacks by third persons other than the sovereign, and whether such alien, in the absence of forfeiture by office found, may convey title to his grantee. Of this there is no doubt. We subjoin a few of the leading cases: *Cross* v. *De Valle*, 1 Wall. 8; *Osterman* v. *Baldwin*, 6 Wall. 121; *Fairfax's Devisee* v. *Hunter's Lessee*, 7 Cranch, 619; *Phillips* v. *Moore*, 100 U. S. 208; *Craig* v. *Radford*, 3 Wheat. 594; *Mooers* v. *White*, 6 Johns. Ch. 360; 1 Washburn on Real Property (5th ed.), 79, and cases there cited.

3. The defendants complain of instructions numbered 4 and 5 given at the request of plaintiff. They are as follows: "(4) You are instructed that an appropriator of water in a stream has no right to or control over any waste or surplus water over and above the amount of his own appropriation, and has no right to prevent the same from running in its natural channel to the prejudice of any one lower down the stream having a right to use or divert such surplus or waste water, and any one interfering with or preventing the use of such surplus water by one lawfully entitled thereto is liable for any damage resulting from such interference. (5) You are instructed that if there

were at any season surplus or waste water, running past the head of defendants' ditch, to which the latter had no right by virtue of possession or ownership, or of any prior appropriation, defendants had no right to interfere with such surplus or waste water, or prevent the same running into the ditch claimed by the plaintiff; and if defendants thereby deprived the plaintiff of any water to which he is entitled, and if you further find that the plaintiff was the owner or entitled to the possession of and enjoyment of a ditch situated below the head of the Tiger Ditch, and constructed for the purpose of conveying the water from said creek, and the defendants interfered with or prevented the running into said ditch of any surplus or waste water running down said creek, then the plaintiff would be entitled to recover from the defendants any damages which he may have suffered by reason of their acts."

These instructions abstractly read like good law. The defendants' complaint is this: That defendants' water right was prior to plaintiff's; that, in order for the defendants to exercise their right, it was necessary to raise their gate, and allow a rush of water to carry out the tailings accumulated in their dam; that this could not be done without opening plaintiff's gate at the same time, for, if plaintiff's gate remained closed, the tailings would not run off, but would back up against defendants, gate, and clog it with tailings, so that the slumming operation could not be carried on; and that, therefore, these instructions 4 and 5 impliedly informed the jury that defendants were not entitled to slum their dam at all, and that, therefore, the enjoyment of their water right was destroyed. But the acts that plaintiff complained of were not the momentary raising of the gate of plaintiff in order to successfully slum defendants' dam. That seems to be the slumming right that defendants claim. But plaintiff's alleged injury was that defendants tore out his gate altogether, and finally let it float off down the creek, and so deprived plaintiff of the water which would accumulate in his reservoir, and so be thrown into the head of his ditch, and this for some three years. That was the injury that plaintiff complained of, and it was that which these instructions met. We understand that this slumming right of defendants was conceded by the parties. It was recognized by the court in

another instruction. But it was not admitted or successfully contended that defendants might unnecessarily exercise the slumming right to the extent of keeping plaintiff's dam always open, or tearing out his gate and keeping it out, and thus destroying wholly plaintiff's enjoyment of his water right, and keeping the water for all the time from going into the head of his ditch. We see no error in these instructions, taken in connection with the rest of the case.

4. One of the findings of the court is that the defendants have a prior right to two hundred and fifty inches of the water of Ophir Creek. The judgment restrains the defendants from interfering with the water right of plaintiff to the extent mentioned in the complaint. The complaint admits the right of the defendants to only two hundred inches. The judgment is open to criticism in not stating the facts in itself instead of referring to something in a pleading. The judgment gives the defendants only two hundred inches, whereas the court found that they were entitled to two hundred and fifty. This seems to have been an error in the preparation of the judgment, which should be corrected. Respondent himself admits that it should be corrected to conform to the findings.

5. This case was tried October 21, 1890. On January 19, 1891, the court made its findings. Between these dates, on November 22d, the defendants presented to the judge an affidavit of one of the defendants setting forth the facts of additional evidence material to the rights of the defendants, and requested the court to hear their testimony. This affidavit was never filed in the case, or served on the plaintiff's attorneys. The jury had found their verdict and been discharged. This affidavit was embodied in the affidavit of defendants filed March 6, 1891, on which defendants based their motion for a new trial on the ground of newly discovered evidence. The substance of the affidavit on which defendants asked for a new trial is as follows: That, in addition to the Tiger Ditch, the defendants owned, and had owned since 1872, what was called the "Illinois Ditch"; that the Illinois Ditch was dug in 1865; that the rights of the Illinois Ditch owners and the China Ditch owners were litigated in 1867, and on July 19th of that year a judgment was rendered adjudging the Illinois Ditch.

people to be the owners of the waters of Ophir Gulch, to the extent of one hundred and twenty-five inches, as against the China Ditch owners, and enjoining the China Ditch people accordingly; plaintiff herein is the successor in interest of the China Ditch owners; defendants are the successors in interest of the Illinois Ditch people, who were the successful litigants in the action above mentioned, in 1867; that on the trial of this case the defendants did not make proof of their rights under the Illinois Ditch title, for the reason that the deed conveying said ditch to them was not on record, and there was no evidence of the same except the deed itself; that a deed had been executed by the Illinois Ditch owners to the defendants in July, 1873; that affiants believed that they had given this deed to their counsel, and the office of said counsel had been destroyed by fire, with all its contents, and affiants believed that said deed had been destroyed in said fire; that on the trial of this case defendants intended to prove said destruction of the deed, but that their said counsel informed them that the said deed was not in his office at the time of said fire; that defendants made diligent search for the deed, but were unable to find the same, and for the want of said deed were unable to prove the ownership in said ditch and water; several weeks after the trial the defendants found the deed; that the rights of the Illinois Ditch to one hundred and twenty-five inches of water are prior to the rights of the plaintiff.

It may be observed that this was the second trial of this case. How the Illinois Ditch matter fared on the first trial does not appear. But the fact that this was a second trial is pertinent to the matter of diligence in providing for the proof of the matter in the alleged lost deed.

Such was the showing of newly discovered evidence. Any right or claim to the waters of Ophir Creek by virtue of the Illinois Ditch and water right was never mentioned on the trial. Defendants relied wholly upon the Tiger Ditch. They claim that they thought that the deed to them of the Illinois Ditch had been destroyed by a fire in the office of their counsel. Before the trial their counsel informed them that the deed was not in his office when the same was destroyed by fire. Defendants further say that they have made diligent search for the deed, and could

not find it. They say nothing about how they did find it after the trial, as explanatory of their not being able to find it when they made their diligent search for it. If what they say is true, they had ample foundation, or, if they did not have the foundation, they had the means of laying it, for proving the grant to them of the Illinois Ditch by secondary evidence. They could have shown the destruction or loss of the deed, and their diligence in endeavoring to find it, if it were lost, and then proved, or at least endeavored to prove, the contents of the deed by secondary evidence. If they had attempted to make such proof, and unavoidably failed, and in addition thereto if they had, on the trial, made any claim of rights under the Illinois Ditch title, or sought to establish any, we should regard with more favor their claim of newly discovered evidence. On the trial they had evidence of their alleged rights under the Illinois Ditch title. They had evidence of the loss of the deed, and they had the grantees present in court to prove, or attempt to prove, the contents. They made no such effort. The deed now would prove no more than the secondary evidence of its contents would have proved on the trial. We are of opinion that no meritorious showing of newly discovered evidence is made.

6. Appellants also specify that the evidence is insufficient to sustain the verdict of the jury or the findings of the court. As we recently observed in *Leonard* v. *Shatzer, ante,* page 422, the appellants collate the evidence that was favorable to them, and the respondent makes the same sort of showing. Appellants say that they do not insist that they are supported by a preponderance of testimony, but that there is no testimony at all contrary to their view. We are of opinion that the record does not support their claim. We can say here, as we said in *Carron* v. *Wood,* 10 Mont. 506: "As often occurs in controversies, there is considerable difference in the statements of witnesses for the respective parties. . . . . It was the province of the jury to pass upon the credibility of witnesses and the weight of testimony, and make a finding. It has often been announced by this court that, where there is evidence to support the verdict, the same will not be disturbed because there is conflicting testimony upon the subject;" citing cases from this court. We are satisfied that the evidence supports the verdict and the findings in this case.

We have now examined all the points presented by appellants, and determine them all adversely to them, except as to the matter of the modification of the judgment.

We pause to remark upon one matter. It seems that a plat of the premises was in evidence. Some of the witnesses constantly refer to this plat to explain the situation. The evidence of the witnesses referring to the plat is all given, and the plat is omitted. The plat would have been of great assistance to this court. When the parties concluded to omit it from the record, they might as well have omitted the useless testimony in regard to it. (*Upton* v. *Larkin*, 7 Mont. 449.)

Let the judgment be modified so that it will adjudge that the defendants are entitled to the prior right to two hundred and fifty inches of the waters of Ophir Creek, instead of two hundred. The District Court is directed to make that modification, and as modified the judgment is affirmed; also the order denying the motion for a new trial. This at the cost of appellants. (*Palmer* v. *Murray*, 8 Mont. 319.)

*Modified and affirmed.*

BLAKE, C. J., and HARWOOD, J., concur.

