McDONALD, APPELLANT, v. LANNEN ET AL.,
RESPONDENTS.

[Submitted January 12, 1897. Decided January 18, 1897.]

*Water Right—Date and amount of appropriation—Oral transfer—Review of evidence.*

WATER RIGHT.—*Date of Appropriation.*—Where the evidence justifies the finding of the court fixing the relative priorities of the appropriations of water, appellant is not injured because the court arbitrarily fixes particular dates of the appropriations of the several parties, the date being merely incidental to the question of priority.

SAME—*Amount of Appropriation.*—T who owned land on both sides of a creek, constructed a ditch on the north side of the stream, by means of which he could irrigate only forty acres of land on that side, although the capacity of the ditch was greater than the amount of the water necessary for that purpose; subsequently and after other appropriations had attached, it was found to be necessary to construct another ditch to reach the land on the south side of the stream. *Held,* that, as to subsequent appropriators, T's appropriation was not limited to the amount necessary to irrigate the forty acres; and that T was entitled to a priority to an amount equal to the capacity of his original ditch.

SAME—*Oral Conveyance of Water Rights.*—In 1869 P settled on unsurveyed public lands (a squatter's right) and made an appropriation of water to be used thereon; by *mesne* oral transfers, B obtained possession of the land and G traded ranches with B's widow, and subsequently filed upon it as a homestead. *Held,* that a squatter's right can be transferred verbally; that the water right was an appurtenant to the land; that the oral transfer did not constitute an abandonment of the water right and that consequently the date of appropriation of G's right was properly fixed as of 1869. (*Barkley* v. *Tieleke,* 2 Mont. 59, distinguished.)

SAME—*Finding of the Court.*—Where the only evidence in the record shows that the amount of P's appropriation was from 50 to 60 inches, a finding fixing the amount at 150 inches is not sustained by the evidence.

*Appeal from District Court, Granite County; Theo. Brantly, Judge.*

ACTION by Angus A. McDonald against Edward Lannen and others to determine the priorities between water rights. There was a judgment for defendants, and plaintiff appeals. Modified.

Statement of the case by the justice delivering the opinion.

This action was commenced on the 7th day of November, 1893, under Sec. 1260, p. 997, 5th Div. Compiled Statutes Mont., for the purpose of determining the respective prior-

ities of the plaintiff and the defendants, who were claimants of the use of the waters of Willow creek, in the county of Granite, State of Montana, and was tried by the court sitting without a jury. The plaintiff appeals from the decree, and claims that the Court committed errors of law in admitting testimony, and that certain findings of fact are not supported by the evidence.

*Durfee and Brown,* for Appellant.

An appropriation of water dates from the commencement of work to utilize it for a useful purpose, if the work is prosecuted with reasonable diligence and in good faith. *Kelly* v. *Natoma Water Co.,* 6 Cal. 108; *Maeris* v. *Bichnell,* 7 Cal. 263; *Kimball* v. *Deerhardt,* 12 Cal. 45; *James* v. *Williams,* 31 Cal. 214; *N. C. & S. C. Co.* v. *Kidd,* 37 Cal. 310; *Osgood* v. *Water & Mining Co.,* 56 Cal. 574; *Sieber* v. *Frink, et al.,* 7 Col. 148; *Colorado Land & Water Co.* v. *Rock Fork, etc., Co.,* 3 Col., Ct. of Ap. 545; *Wells* v. *Mantle,* 99 Cal. 586; *DeNecochea* v. *Curtis, 80* Cal. 399.

If, as we contend, the undisputed evidence shows that the plaintiff appropriated the waters of Willow creek from the fall of 1870, there is absolutely nothing in the evidence to show that the plaintiff ever abandoned his right from that time until the completion of his ditch in the spring of 1871. The court will take judicial notice of the climatic conditions of the country through which this ditch is constructed. (*Estill* v. *Irvine,* 10 Mont. 513.)

It follows, therefore, that the commencement of the work in the fall of 1870 and the completion of the same early in the spring of 1871 was a prosecution of the work with reasonable diligence. (Pomeroy on Riparian Rights, § 89; *Woolman* v. *Garringer,* 1 Mont. 535; *Atchison* v. *Peterson, Id.,* 561.)

We submit that the testimony did not warrant the court in finding that the plaintiff's right dated from the 15th day of May, 1871, but dated not later than the 1st day of September, 1870.

That the verbal sale of a water right operates as an aband-

onment is settled by a long list of authorities. (*Smith* v. *O' Hara*, 43 Cal. 375; *Barkley* v. *Tieleke*, 2 Mont. 59; Kinney on Irrigation; § 253, p. 407; Pomeroy's Riparian Rights, § 89, p. 143.)

It is a well settled rule that in determining priorities between contesting claimants for water that an important element for the court to consider is the need of the appropriator at the time of the appropriation, and that no one is entitled to have a priority adjudged for more water than he actually appropriated at the inception of his right, and that proof of present necessities is no criterion of the original appropriation. (*Nichols* v. *McIntosh*, 19 Col. 22; *Combs* v. *Agricultural Ditch Co.*, 17 Col. 151; *Fort Morgan L. & C. Co.* v. *South Platte D. C.*, 18 Col. 1.)

*Rodgers and Rodgers*, for Respondents.

One of the important questions suggested by appellant, is whether or not a verbal sale of land and the water right appurtenant thereto accompanied by a delivery of the possession thereof to the vendee, operates as an abandonment of the water right by the vendor, so that the vendee's right dates from the sale only, or does the vendee take the right of the vendor unprejudiced ?

We maintain that the vendee takes the same right that the vendor had and his right to the water dates from the vendor's appropriation.

It will not be denied that so far as the land is concerned the grantee takes a good title against all the world except the United States; for a person not in privity with the original grantee can have no right to avoid the sale on the ground that a formal deed was not executed, and the original grantor is estopped from asserting any rights, because the contract is an executed one, the consideration paid, and the grantee is in possession. Furthermore the open possession of the land by the vendee is notice to the world of his ownership of such lands. *Storey* v. *Black*, 5 Mont. 26; *Jones* v. *Marks*, 47 Cal. 242.

If by such sale the vendee obtains a good title to the land, by what course of reasoning can it be said that he fails to take title to all the appurtenances of said land. An executed contract which passes the equitable title to a ditch to which there is appurtenant a water right insures to the grantee such water right as against an adverse claimant. (*Ortman* v. *Dixon*, 13 Cal. 34.)

The question of abandonment of a water right is also a question of intent. (*Dodge* v. *Marden*, 7 Oregon 457; *Middle Creek Ditch Co.* v. *Henry*, 15 Mont. 558, 39 Pac. 1054.) The true rule is that the appropriator is entitled to so much of the waters of the stream as was necessary to irrigate the lands owned by him at the date of his appropriation and which were available for the production of crops. (*Kleinschmidt* v. *Greiser*, 14 Mont. 484, 37 Pac. 5.)

Buck, J.—Appellant (plaintiff in the lower court) complains that the trial court was not justified by the evidence in finding May 15, 1871, to be the date of his appropriation of water. Appellant testified that he had commenced to dig his appropriation ditches in the fall of 1870, and that he completed them in the spring of 1871. A witness called in his behalf testified that the said ditches had been "taken out" in 1871, "early in the spring, April or May," he was not sure which; that he (witness) had assisted in the construction of one of these ditches in the spring of 1871; and that at the time this ditch was the only one he had seen on the place. Another witness testified that appellant had no ditches on his land in 1872. A statutory declaration of water right, made and filed under oath, by appellant in 1885 (introduced in evidence), recited that appellant's appropriation of water from Willow creek had been made in the month of May, 1871. There was before the court also testimony in behalf of several other appropriators who claimed rights prior to appellants. The court found these latter rights antedated appellant's; and while, from the testimony, it was impossible to determine the exact date of any one of them, established the dates as of May 1,.

1871. There being evidence to support the lower court in deciding the relative priorities aforesaid, we are of opinion that appellant was not injured by the establishing of these dates as of May 1, 1871, and his own as of May 15, 1871. In water right suits testimony relating to original appropriations, some of them made many years before the controversy arises, is very often indefinite as to dates, and when this condition arises at the end of the suit the trial court, for the purpose of framing a decree specifically settling the respective rights of parties, of necessity must often arbitrarily fix a particular day or days for appropriations of water. Therefore, while the selection of these specific days of May 1st and May 15th was, in a sense, arbitrary, it being incidental merely to the determination of the question of priority, the action of the court was proper.

Appellant claims again that the court erred in finding that one Thomas was entitled to 150 inches of the waters of Willow creek as of May 1, 1871. As to the alleged error in the matter of finding the particular day of the appropriation, the previous reasoning applies. While conceding that there is some testimony to support the finding as to the amount of water, appellant urges that the first of the Thomas appropriation ditches constructed was only used to reclaim land on the north side of the creek, and, regardless of the question of its capacity, had no more than 40 acres of land subject to its irrigation; and that it was found necessary to construct another ditch to reach that portion of the ranch on the south side of the creek. The test of the extent of an appropriation with reference to a subsequent right to the waters of a stream is dependent upon the capacity of the first ditch before such subsequent appropriation is made. When an owner or possessor of land makes an appropriation of water in excess of the needs of the particular portion of the land upon which he conveys the water, and other portions of his land also require irrigation, his water right is not limited by the requirements of the particular fraction. He may still, despite the fact that another's water right has attached, construct other ditches

through his remaining land, provided that the total amount of·
water conveyed by all the ditches on his place does not ex-
ceed the original capacity of the first ditch.    As between
his appropriation and the subsequent water right, the capacity
of the ditch by means of which he first made his appropriation
is the test of the extent of it.    There was no error, there-
fore, in the amount of the water awarded to Thomas.

The court found that the estate of John Gird, deceased,
was entitled to 150 inches of the waters of Willow creek as of
May 1, 1871.    The testimony discloses these facts : The first
appropriation of water on the 160-acre Gird ranch was made
by one John Pickens, who settled upon it some time in 1869.
Pickens sold the land to one Fahey some time later, who,
after taking possession, subsequently sold and turned it over
to one Patrick, to whose possession one Bradburn succeeded
as a purchaser.    Gird acquired possession of the land in 1884
by trading ranches with the widow of Bradburn, and subse-
quently filed upon it as a homestead.    All the transfers afore-
said were verbal.    For many years it had been unsurveyed
land.    One settler followed another in the possession thereof.
The possession of the land and the use of the water, however,
were continuous on the part of John Gird and his predeces-
sors.    Appellant contends that all evidence as to any appro-
priation of water made by any possessor of the land prior to
Gird was inadmissible, for the reason that a verbal sale of a
water right operates as an abandonment of the same by its
owner.    It is claimed that the case of *Barkley* v. *Tieleke*, 2
Mont. 59, settles the law in this respect.    This case has fre-
quently been cited in the text-books as a precedent on the
question.    It is to be borne in mind, however, that *Barkley*
v. *Tieleke*, was decided in reference to mining water rights
and ditches considered by themselves, rather than with refer-
ence to the mining claims to which they were appurtenant;
and whether or not the court in deciding it meant to establish
a precedent to be applied to agricultural water rights of the
character involved in this suit is extremely doubtful.    At the
time when *Barkley* v. *Tieleke*, was decided,—in 1874,—litiga-

tion in Montana in respect to water rights for agricultural purposes was comparatively in its infancy. Within the past few years (see *Quigley* v. *Birdseye*, 11 Mont. 439; 28 Pac. 741; and *Ditch Co.* v. *Henry*, 15 Mont. 558, 39 Pac. 1054,— opinions rendered by that able jurist, Mr. Justice De Witt, the subjects in controversy being in reference to water rights for agricultural purposes) this court has viewed somewhat doubtfully the applicability of this decision as a precedent for suits involving agricultural water rights. *Barkley* v. *Tieleke*, under the condition of facts involved therein, was a most just decision. But one of the premises therein upon which the decision is apparently, though not necessarily, based, we are compelled, after mature consideration, to disapprove at least in so far as it affects conflicting water rights of the present character. The language of the territorial court in that case was, substantially, that where an appropriator of a water right transfers it by an imperfect or verbal conveyance he thereby abandons it, and his transferee in possession is to be regarded, not as a successor in interest, but only as an appropriator by recapture, and therefore as debarred from availing himself of the date of his predecessor's appropriation. A squatter or settler upon unsurveyed public lands of the United States has never been regarded as a trespasser. Such a possession of unsurveyed public land taken in good faith is clearly recognized in the general spirit of congressional legislation (see particularly acts granting government lands to railroads), and is always carefully protected by the courts. Of course, it is subservient to the United States government, or an actual or inchoate grantee of the government. But, as against all others, such a right, based though it be upon mere possession, is absolute. The settler may build and make other improvements upon the land. He has such a possession as to admit of the legal appropriation of a water right therefor. See *Tucker* v. *Jones*, 8 Mont. 225; 19 Pac. 571. To hold, then, that a settler who sells and transfers the possession of his claim, together with a water right he has appropriated for its benefit, to another settler by doing so abandons said water

right to such an extent as to render it unavailable to his trans-feree as against an appropriator of water subsequent in time to the first appropriation, is an inequitable doctrine. With reference to water rights of the character before us, an incon-sistency in the application of the decision of *Barkley* v. *Tieleke* would at once become apparent.

We are not aware that it has ever been held in Montana that a squatter on the public domain could not transfer the possession of his claim and the improvements thereon verbally. He unquestionably can; and the transferee whom he puts in possession becomes his successor in interest. To hold, there-fore, that this is true of the transfer of a real estate claim, and not true of a water right, merely incidental and appurten-ant thereto, is wholly unreasonable. In this connection we have read with interest the pertinent decision of the supreme court of Oregon (see *Hindman* v. *Rizor*, 27 Pac. 13), and also the recent decision of the supreme court of Colorado (*Nichols* v. *Lantz*, 47 Pac. 70). In rendering his opinion in this case, Judge Brantly, the judge of the lower court, uses the following apt language: "It is true that conveyances of lands, or any interest therein, must be in writing, or they fall within the statute of frauds, and are void under certain cir-cumstances. It is an elementary principle, however, that no person can take advantage of the void character of a contract unless he be a party to it, an innocent purchaser, or some one who stands in some sort of privity to one of the parties; in other words, no one but a party to a contract, or one who stands in privity with him, can avoid the contract under the statute of frauds. For instance, A sells B his farm, and delivers him the possession of it. He executes no deed to B. As long as B or A does not seek to avoid the contract, or some one who stands in privity with one of them, what has the rest of the world to do with the matter? If they do not care to take advantage of the statute of frauds, no one else can plead it for them." We cannot comprehend the logic of the language in *Barkley* v. *Tieleke*, which is claimed generally to hold, if it does, and the decision of the supreme court of California,

rendered in 1872 (see *Smith* v. *O'Hara*, 43 Cal. 373), which does hold, that an appropriator of a water right by verbal transfer abandons it, and therefore divests his transferee, to whom he has honestly intended to surrender the property, of all rights of priority he himself acquired therein. The error seems to lie in the failure to properly distinguish in this connection the true sense of the word "abandon." See *Ditch Co.* v. *Henry*, 15 Mont. 576, 577, 39 Pac. 1054. By transfering his possession of land, together with a water right appurtenant thereto, a settler certainly does abandon any intention he may have had of personally acquiring a government patent to the property by a compliance with the United States statutes. But a mere failure to execute a deed in no wise justifies the inference that he intends to throw away his honest buyer's rights as well as his own. He personally, and any grantee from him with notice, would be estopped, as intimated in *Barkley* v. *Tieleke*, from reasserting his rights as against his purchaser. Why, then, should a stranger to his title be allowed a greater privilege; a stranger, too, not in privity with the United States government itself? Different rules apply to the acquisition of title to mining claims from those applicable to agricultural. The right to the possession of a mining claim comes only from a valid location which is a grant. See numerous Montana authorities. We are satisfied that a verbal transferee of a settler's claim and water right appurtenant thereto, who takes possession of the same, is the successor in interest of the original appropriator of the water, that he does not take it by recapture, and that he can avail himself of his predecessor's priority. With appellant's contention that the court was not justified in finding that the first predecessor of Gird (Pickens) appropriated 150 inches of water, we agree. The lower court must have overlooked the fact that said Pickens himself and his son both testified that the ditch of the original appropriation carried about 50 or 60 inches of water, and the record shows no other contemporaneous evidence on the question. It is ordered, therefore, that this case be remanded to the lower court with directions

that either from the evidence heretofore before it, or, if the judge, in his discretion, sees fit to direct the taking of further evidence on the subject, then from all the evidence, a new finding be made as to the original appropriation of water by the first predecessor of John Gird.

*Remanded.*

Pemberton, C. J., and Hunt, J., concur.

