**ALMO WATER CO. et al. v. JONES et al.** [*]

**PIERCE et al. v. ALBION–IDAHO LAND CO. et al.**

No. 5820.

Circuit Court of Appeals, Ninth Circuit.

March 24, 1930.

*Rehearing denied May 12, 1930.

Jess B. Hawley, Oscar W. Worthwine, James H. Hawley, Jr., and Hawley & Hawley, all of Boise, Idaho, for appellants Almo Water Co. and others.

S. T. Lowe, of Burley, Idaho, and E. M. Wolfe, of Twin Falls, Idaho, for appellants Pierce and others.

W. G. Bissell and Branch Bird, both of Gooding, Idaho, for appellee Idaho Land Co.

Before RUDKIN, DIETRICH, and WILBUR, Circuit Judges.

RUDKIN, Circuit Judge.

The present suit was instituted by the Albion-Idaho Land Company, a California corporation, owner of a considerable acreage of arid land in Cassia county, Idaho, irrigated by waters diverted and appropriated from Raft river in that state, against approximately seven hundred residents and citizens of the states of Idaho and Utah, who claim the right to use waters appropriated and diverted from the same stream and its tributaries, to settle and determine the right of the plaintiff in and to the use of the waters claimed by it, to quiet its title thereto, and to restrain the defendants from interfering therewith. Many of the defendants answered the complaint, and nearly all of them set up claims to the use of the waters of the same stream and its tributaries under appropriations made by themselves or by their predecessors in interest.

Two appeals have been prosecuted from the final decree. The Almo Water Company and its stockholders have appealed from that portion of the decree awarding to certain of the defendants the use and right to use the waters of the north fork of Almo creek and its tributaries for irrigation and other purposes, and the defendants Pierce and wife and Sears and wife have appealed from that portion of the decree awarding to the plaintiff the use and right to use certain waters, and also from the refusal of the court to award to the appealing defendants further and additional rights.

We will first consider the appeal of the Almo Water Company and its stockholders, which involves the waters of Almo creek only. This stream, 7 or 8 miles in length, is a tributary of Raft river. On its downward course it divides into two branches, commonly called the north and south forks. The parties are not agreed as to the natural division of the water flowing in the main stream as between the two branches. While conceding that the north fork flows a large quantity of water during the high-water season, in the late spring and early summer, the appellants contend that this branch is entirely dry in the low-water season, which begins perhaps late in June or early in July. The appellees, on the other hand, contend that the waters of the main stream, in their natural state, were about equally divided between the two branches at all seasons of the year. The controversy between the parties in this regard was not determined by the court below, but it is to be inferred from the language of the opinion[1] that the court accepted the view contended for by the appellants. The appropriations or diversions with which we are chiefly concerned were made by settlers in the late 70's or early 80's of the last century. Some of these appropriations were made from north fork, but the greater number were from the south fork. In 1893 a decree was entered in one of the state courts adjudicating the rights of all claimants from the south fork, but the claimants from the north fork were not made parties to that suit. About the year 1889, while this suit was pending, all, or nearly all, of the predecessors in interest of the appellant Almo Water Company formed an association, and constructed a canal for the purpose of diverting the waters claimed by them from the main stream above the forks, during the low-water season, and later the corporation was formed to carry out the same purpose. These appel-

lants first contend that neither the appellees nor their predecessors in interest have been seized or possessed of any of the waters of Almo creek, except during the extreme high-water season, for more than fifteen years last past, and that they are therefore barred by the statute of limitations of the state from recovering any of such waters, except during the extreme high-water season. No doubt there has been the usual encroachment on the rights of others in this case, and the more diligent and aggressive claimants have diverted and used more than their just proportion of the scanty water supply, but it does not appear that such encroachment has been so persistent and continuous or of such duration as to result in gain or loss of rights by adverse use. Such was the conclusion of the court below, from a consideration of all the testimony and from a personal inspection, made at the instance of the parties, of conditions at and surrounding the point where the two branches separate from the main stream. In view of the testimony and the circumstances, we do not feel that we would be justified in disturbing the findings thus made.

It is further suggested that no valid appropriations were in fact made by the predecessors in interest of the appellees. The means originally employed to divert the water from the stream were crude and primitive, consisting, as they did, of plow furrows running from the stream to low points on the lands to be irrigated, but nearly all the early appropriations from the stream were made in this way, and the validity of the appropriations has been consistently upheld by the state courts.

It is next contended that the court erred in granting so large a quantity of water to the different appellees and in fixing the dates of priority. The several appellees claimed under William Jones, Thomas Edwards, and Joseph T. Nicholas, who made settlements and diverted water to irrigate their lands in the years 1879 and 1880. The testimony as to what was done and how much water was diverted a half a century ago is necessarily more or less indefinite and unsatisfactory, but the findings of the court that appropriations were made by these early settlers on the dates and in the amounts fixed by the decree is amply supported by the testimony. One of these original settlers, after residing on his claim for a couple of years, relinquished in favor of his father, and his mother later proved up on the claim, upon the death of her husband. The court below held that the appropriation for the land thus acquired re-

---

[1] Memorandum opinion.

lated back to the date of the first diversion, and in this ruling we find no error. McDonald v. Lannen, 19 Mont. 78, 47 P. 648.

Another of the original claimants diverted water for use on his homestead and an additional tract later acquired under the desert land law. The court below awarded the full amount appropriated as of the date of the first diversion, and this ruling is assigned as error. The possession of the desert land before actual entry was not prohibited by law, and, inasmuch as the lawful possessor later acquired title to the land, we see no error in the ruling complained of.

The court below reduced the appropriation of one of the parties under whom the Almo Water Company claims from 160 inches, as fixed by the 1893 decree to which we have referred, to 100 inches, and changed the date of appropriation of another from March 31, 1879 to April 30, 1879. It is not contended that the findings in this respect are not supported by the testimony in the present record, but reliance is placed solely upon the early decree of the state court fixing a different amount and a different date. But the present appellees were not parties to that decree, and, of course, are not bound by the adjudication made.

Again, it is contended that the court erred in awarding certain rights to William Shangles because he was not a party to the suit. The appellees concede that Shangles was not a party to the suit, but contend that one Hansen, his successor in interest, was such party, and that the water was awarded to Shangles by mistake. The pleadings in the case are not all before this court, so that we are unable to say whether either contention is supported by the record. In any event, it does not appear that the question was specifically called to the attention of the trial court.

The ruling of the court setting aside Grape creek as a separate stream is lastly assigned as error. But it seems that such action was taken by the court without objection or protest from any source.

We will now pass to a consideration of the second appeal. By the 1893 decree of the state court, to which reference has been made, there was awarded to Sweetser Bros. & Pierce, a copartnership, a continuous flow of 25 inches of water during the entire year, 511 inches additional from April 1, 1871, to July 1 of each year, and 200 inches, being a part of the 511 inches, during the entire irrigation season of each year, dating from April 1, 1879. The findings of fact, on which the state decree was based, show that the waters thus awarded were to be used in connection with and for the irrigation of four certain claims, which for convenience will be referred to as the Bressler claim, the Pierce claim, the Brooks claim, and the Hovey claim, excepting about 66 acres of the latter, aggregating about 536 acres in all. The appellants have succeeded to all the rights of the copartnership in the Pierce and Brooks claims, embracing about 358 acres, together with 325 inches of the waters awarded by the state decree, and the appellee Albion-Idaho Land Company originally succeeded to all the rights of the copartnership in the Bressler and Hovey claims and to the water rights appurtenant thereto. Later, however, the International Mortgage Bank succeeded to all the rights of the copartnership in the Hovey claim and the appurtenant water rights. It would seem, therefore, that the waters decreed to the copartnership should now be divided and apportioned between the present owners of the four original claims mentioned in the findings of fact, but this was not done. The court awarded to the appellee Albion-Idaho Land Company, as owner of the Bressler claim, 100 inches, to the appellants Pierce and Sears, as owners of the Pierce and Brooks claims, 225 inches, and, apparently, to the International Mortgage Bank, as owner of the Hovey claim, and other lands not embraced in the state decree, the remaining 211 inches. It seems quite apparent that the appellee Albion-Idaho Land Company is entitled to the full amount allotted to it. Indeed, as owner of one of the four original claims, the allowance would seem to be less than it was entitled to claim. On the other hand, it would be rather difficult to sustain the allowance of 211 inches to the International Mortgage Bank, as it has only succeeded to the Hovey claim, and a considerable part of that received no water under the state decree. It would seem also that the appellants were entitled to a greater allowance, but we find insurmountable jurisdictional difficulties in the way of granting them any relief. The citation on appeal was only served on the Albion-Idaho Land Company and the International Mortgage Bank, and, as already stated, the former is clearly entitled to the allowance made to it; and no error has been assigned to that part of the decree making the award to the latter. We might, no doubt, increase the allowance in favor of the appellants as against the appellees before this court, but any increase of the allowance in their favor would necessarily

and adversely affect the rights of many other defendants in the case who have not been made parties to the appeal and are not before this court. The allowance to the appellants could not be increased at this time without giving all other claimants their day in court and an opportunity to be heard. Illinois Trust & Savings Bank v. Kilbourne (C. C. A.) 76 F. 883.

 Apparently, the appellee Albion-Idaho Land Company was awarded a small fraction of the 25 inches of continuous flow, and this is assigned as error, for the reason that no claim was made therefor in the pleadings; but the amount awarded was very small, and the pleadings may be deemed amended so as to cover the award thus made.

We find no error in the decree, and the same is affirmed.

DIETRICH, Circuit Judge, took no part.